UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EVERETT KELSEY, on behalf of himself and all others similarly situated,

*Plaintiff*,

v.

CLARITYCHECK INC.,

*Defendant*.

Case No. ____________

CLASS ACTION COMPLAINT

DEMAND FOR JURY TRIAL

## CLASS ACTION COMPLAINT

Plaintiff EVERETT KELSEY ("Plaintiff"), on behalf of himself and all others similarly situated, brings this Class Action Complaint against Defendant, CLARITYCHECK INC. ("Defendant"), due to Defendant's violations of consumer privacy and intellectual property laws through the mass appropriation of consumer profiles for profit without consent during the applicable statutory period and continuing through the present day ("Class Period").

Plaintiff EVERETT KELSEY makes the following allegations based upon personal knowledge as to himself, as well as upon information and belief and investigation of his counsel as follows:

## STATEMENT OF THE CASE

1. Plaintiff brings this class action lawsuit against Defendant for its deliberate disregard for consumer privacy as well as its profiling of millions of Americans without their consent for profit.

2. Defendant owns a platform called ClarityCheck which is a digital service that allows any person seeking information on another individual to pay in order to "identify anyone, anywhere," and "verify online identities."[1] Specifically, Defendant defines this service as "a lookup platform that helps you identify the people, contacts, and items in your life using publicly available information" using "four tools" which are called (1) phone lookup, (2) email lookup, (3) photo lookup, and (4) vehicle identification number ("VIN") look up to find the "identity or history behind nearly any contact point in seconds."[2] According to ClarityCheck, it "is a legitimate subscription service trusted by more than 10 million people" and they do not "hack, track, or

---

[1] https://claritycheck.com, (last accessed August 25, 2026).

[2] *Id.*

surveil anyone" – unfortunately for millions of consumers who are profiled by Defendant, unbeknownst to them, the opposite is true.[3] ClarityCheck is a mass surveillance apparatus which sells its information as "structured reports that anyone can read in seconds" to any end user, regardless of intentions, who is willing to pay for it.[4]

3. ClarityCheck collects the following information on millions of Americans: full name, home addresses, photographs of the subject, email addresses, family members, social media profiles, phone numbers, past location history, web activity (directories, blogs, forums, and news sources), dating profiles (and corresponding usernames, email addresses, and photographs), and employment history (collectively, the 'PII").[5] Contrary to ClarityCheck's representations otherwise, it also collects biometric information from photographs in the form of facial recognition data – which allows it to enrich its search capabilities for the "photo lookup" methodology of using its ClarityCheck platform.[6]

4. To compound matters, ClarityCheck's protection of the PII and biometric information that it collects is woefully insufficient. According to researcher Jeremiah Fowler, a cloud database with 450 GB of 9,042,977 million images of people was left unsecured in connection with ClarityCheck's "photo lookup" system.[7] Additionally, these images, shockingly,

---

[3] *Id.*

[4] https://claritycheck.com/about, (last accessed, Aug. 25, 2026).

[5] https://claritycheck.com, (last accessed August 25, 2026).

[6] https://claritycheck.com/image-lookup, (last accessed Aug. 25, 2026) ("*Do you use facial recognition to identify individuals?*" "*No. ClarityCheck does not provide facial recognition or person-tracking across private platforms. Our image search technology is designed to find where a specific file or visually similar image exists in public sources, helping you find people through their public online presence rather than biometric verification.*")

[7] Jeremiah Fowler, "*Reverse image search platform exposed 9 million images*," EXPRESSVPN (ONLINE) (Aug. 19, 2026), at https://www.expressvpn.com/blog/clarity-check-data-exposed/.

included a database of the images of children.[8] What Fowler found – inclusive of photographs that were several years old according to metadata timestamps – is also contrary to ClarityCheck's own Terms and Conditions, which state that images within the platform would be deleted within 14 days automatically.[9]

5. By no means whatsoever is biometric information, let alone the biometric information of children, considered to be information which is "publicly available." Nor is the compilation of intimate information, like the dating profiles of Plaintiff and Class members, "publicly available." Finally, the compilation of all of the PII and biometric information in the same place is not a publicly available tool – if it were, Defendant would not be charging a subscription fee and credit purchasing system for the profiles that it offers. Instead, all of this information would be accessible on a search engine and Defendant would be out of business.

6. At bottom, Plaintiff was extremely distressed to learn that ClarityCheck is using his name, personal information, photographs, likenesses, and personas to secure paid subscriptions to its platform. Plaintiff and Class members did not consent to having their PII or biometric information linked to a paid offering or subscription to a platform – especially because this was done without their knowledge. ClarityCheck also advertises its website by publicly displaying teaser profiles of the information of Plaintiff and Class members with their PII, reacting only some of the information to entice platform subscribers to pay for that information.

7. ClarityCheck's subscription model requires monthly payments and a credit purchasing system in order to gain access to the profiles of Plaintiff and Class members, which is

---

[8] *Id.*

[9] *Id.*

the equivalent of having access to a database of millions of Americans without their consent. Defendant's ClarityCheck platform functions solely to misappropriate Plaintiff and Class members' PII and biometric information without permission or consent. While Plaintiff and Class members may have shared their PII and photographs with certain companies or the government in a variety of contexts, they did not consent to have all of this information compiled into dossiers and sold to anyone willing to purchase it. Indeed, there was no consent to the commercial use of the personas, PII, or biometric information of Plaintiff and Class members to sell subscriptions and purchase credits to a website which they have zero relationship.

8. Defendant makes its profits unethically: by selling information which it has no right to use, let alone to sell. By using Plaintiff and Class members' PII and biometric information, Defendant violated intellectual property and privacy rights. Through these actions, Defendant has violated state and common laws, and Plaintiff seeks all available forms of relief – including injunctive relief to cease the use of his PII, all available forms of damages (including statutory damages), reasonable costs and attorneys' fees, pre- and post-judgment interest, and any other relief this Court deems just and proper.

**JURISDICTION AND VENUE**

9. *Subject Matter Jurisdiction.* This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). The amount of controversy exceeds the sum of $5,000,000 exclusive of interests and costs, there are more than 100 putative Class members, and minimal diversity exists because one or more putative Class members are citizens of a different state than a Defendant.

10. *Personal Jurisdiction.* This Court has personal jurisdiction over Defendant because Defendant intentionally availed itself of this jurisdiction by marketing, employing individuals, and

providing services in New York; Plaintiff Kelsey is domiciled in New York, New York; and Defendant is registered as a foreign corporation in New York with significant activities through its ClarityCheck platform operating within New York and collecting information on New York consumers, like Plaintiff Kelsey.

11. *Venue.* Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant operates in this District and a substantial part of the events, acts and omissions giving rise to Plaintiff Kelsey's claims, who is domiciled in New York, New York, occurred within this District.

## PARTIES

### PLAINTIFF

***Plaintiff Everett Kelsey***

12. Plaintiff Kelsey, and at all times mentioned herein, was an individual citizen of the state of New York; but, splits his time between New York and California, having lived in California over the last decade.

13. Plaintiff Kelsey's data was collected by Defendant in order to enrich its ClarityCheck platform while living both in New York and in Calfiornia. Upon information and belief, on at least one occasion, Plaintiff Kelsey's ClarityCheck profile has been purchased – which disseminates his PII into the public while Defendant profits from it.

14. Plaintiff Kelsey has suffered the following damages: (1) the loss of value of his personal data, which has intrinsic value given his profile is being actively sold for commercial profit on the ClarityCheck platform, (2) the loss of privacy associated with the fact that Plaintiff Kelsey's profile has aggregated his PII and sold it for profit – and continues to make it available to be sold for profit – through the ClarityCheck platform, (3) the failure to protect Plaintiff Kelsey's

data given the recent exposure of ClarityCheck's platform having an unsecure method of protecting its data, (4) loss of time dealing with the necessity to monitor the PII collected by Plaintiff Kelsey to ensure its accuracy and usage, and (5) extreme distress caused by the unauthorized use of Plaintiff Kelsey's PII and biometric information through the creation of his ClarityCheck profile which is available for commercial purchase.

## DEFENDANT

***Defendant ClarityCheck Inc.***

15. Defendant ClarityCheck Inc. is a data aggregation, consumer profiling, and consumer profile subscription service with its headquarters located in Delaware.

## FACTUAL ALLEGATIONS

### *Defendant's Business and Collection of PII*

16. In the course of doing business, Defendant acquires a significant amount of highly valuable private information from various sources on millions of Americans, including the acquisition of the PII of Plaintiff and the Class members. Defendant's entire business model is predicated on the acquisition of this data, which acquires through the scraping and other access of different publicly and privately available sources. The reason for this is to commercially sell the data it collects then collates into dossiers on millions of Americans for profit.

17. According to Defendant, there are over 100 million profiles which are searchable on the ClarityCheck platform.[10] Defendant defines the ClarityCheck product as "a reverse lookup platform covering phone numbers, email addresses, images, VINs, people searches, and business entities – helping users identify unknown callers, verify contacts, and research anyone or anything

---

[10] https://claritycheck.com/about, (last accessed, Aug. 25, 2026).

in seconds."[11] ClarityCheck, according to Defendant, "aggregate[s] publicly available records and open-source intelligence into clear, structured reports that anyone can read in seconds."[12]

18. Ironically, while Defendant claims that "privacy is our priority," Defendant's true intention is to enrich its various forms of search and the personal profiles it sells. Currently, Defendant's ClarityCheck platform sells six services:




19. Each of these services, which are search services, lead users of the ClarityCheck platform to the profiles that may correspond or be related to the datapoints entered in the search service tool. The information in each profile includes (but is not limited to) the PII, inclusive of full name, home addresses, photographs of the subject, email addresses, family members, social media profiles, phone numbers, past location history, web activity (directories, blogs, forums, and

---

[11] *Id.*

[12] *Id.*

news sources), dating profiles (and corresponding usernames, email addresses, and photographs), and employment history.

20. A sample of these profiles, of which below is the undersigned counsel's own profile, appears as follows:






21. Concerningly, the profiles also offered additional information for which a user could pay – implying that the subject being searched (here, the undersigned counsel) maintains relationships with certain individuals, has social media platforms or profiles, or has specific phone numbers. In reality, the undersigned counsel's "associated relationships" listed two individuals who he has never met, his profile includes a link to his childhood Facebook account that was deleted more than a decade ago, and the phone numbers that were collected on him are entirely incorrect and have never been in use by him.

22. Frighteningly, someone who buys this information may rely upon it.

23. For example, there is a section of the undersigned counsel's profile that implies active membership on dating profiles. However, he does not have any active dating profiles. If a

spouse (or a spouses' friend or relative) looked up the undersigned counsel's profile on ClarityCheck, the implications could be severe for his personal relationships. The undersigned counsel's profile included much, if not all, of the PII which is discussed in this Complaint – and the same holds true for Plaintiff Kelsey's profile, which is redacted and appended as **Exhibit A**.

24. Furthermore, the undersigned counsel tested the reverse image lookup process of his own face. While Defendant represents that there is no use of facial recognition on the ClarityCheck platform, the opposite is true. ClarityCheck says as much on the website itself as well as within the facial imaging search process, as seen below:



25. The undersigned counsel also searched an image from the date of the filing of this Action in order to test the facial recognition software that the ClarityCheck platform uses – ultimately, and as seen below, that software not only discloses that it collects biometric data, but it found other images of the undersigned counsel from various websites – to confirm that it works (and it does):




ClarityCheck
BY
0
Phone
Email
Photo
Vehicle
People
Entity
Upload Photo
Loading
How to choose the right photo
Scanning biometric data...
4 %
RETRIEVING IMAGES
This report shows publicly available online information about the person in your uploaded photo. Results include social media profiles, news articles, and other web sources that were active at the time of the search.
91 - 100
Exact match
80 - 90
Possible match

ClarityCheck

BY
0

## LOOKUP RESULTS

This report shows publicly available online information about the person in your uploaded photo. Results include social media profiles, news articles, and other web sources that were active at the time of the search.

91 - 100 Exact match    80 - 90 Possible match



26. None of the information, from PII to biometric information, is ever given to the Defendant for the ClarityCheck platform with any sort of consent – let alone consent to have that information commercially sold in profiles to the public. In order to entice potential users and current users of the ClarityCheck platform to pay for access to profiles, it includes teaser profiles to show that a particular person indeed has a profile on ClarityCheck – as can be seen below with respect to the undersigned counsel:




27. This teaser profile is yet another exemplar of the commercialization of PII and biometric information of Plaintiff and Class members by Defendant. Users who "enter [their] email to get [their] report" are prompted to pay Defendant in order to access that particular profile, as well as are prompted to enroll in a subscription service to continue to access that profile and other profiles on the ClarityCheck platform.

28. Initially, the payment schedule for users is as follows:

a. **<u>Standard Subscription</u>**: $29.99 for 28 days of access to the platform with "20 lookup credits," regular monthly searches, and the possibility of upgrading.

b. **<u>Credit-Based Lookups</u>**: either $24.99 (10 credits), $49.99 (25 credits), or $89.99 (50 credits) for credits beyond what the standard subscription offers.

c. **<u>Sex Offender Registry Check</u>**: $19.99 for access to search the nationwide state and federal sex offender registries, with access to official offender data.

d. **<u>Unlimited PDF Downloads</u>**: $9.99 to access PDF versions of the various profiles that were searched for on ClarityCheck that are available offline.

29. With over 10 million users on the platform, Defendant could be monetizing the commercialization of Plaintiff's and Class member's profiles for many millions of dollars – all without the consent of each person for whom a profile exists.

***The Data Exposure***

30. The failure to secure PII and biometric information of the Plaintiff and Class members is an example for why the Defendant should not be allowed to maintain the ClarityCheck platform at all.

31. As previously said, in August of 2026, a researcher named Jeremiah Fowler discovered a publicly exposed database that was not password protected nor encrypted – containing 450.2 GB of data, including 9,042,977 image files that were stored.[13] The records were stored in folders which were labeled either as "faces" or "profiles," as can be seen below:




[13] Jeremiah Fowler, "*Reverse image search platform exposed 9 million images*," EXPRESSVPN (ONLINE) (Aug. 19, 2026), at https://www.expressvpn.com/blog/clarity-check-data-exposed/.

32. Within those folders, Fowler examined (and subsequently redacted) the image of a sample of "faces" which had been saved within the publicly exposed file – these "faces" included images of adults, teenagers, and children, and appeared as follows:



33. Fowler immediately contacted Defendant regarding the exposure on the ClarityCheck platform to alert them. Defendant – which still has not warned potential victims nor posted publicly about the breach of consumer privacy – stated as follows, "[t]hank you for your diligent and responsible disclosure. I completely understand your concerns regarding the exposure of sensitive images and the associated privacy risks. We greatly appreciate ethical researchers like you who bring these matters to our attention so that we can act swiftly to protect our users' data and privacy."[14]

34. Naturally, Defendant did not address the concerns about the privacy of Plaintiff and Class members: only of its users. While Defendant enriches itself off of the PII and biometric

---

[14] *Id.*

information that it collects on Plaintiff and Class members, it seemingly has no concern about how their conduct impacts their privacy rights.

## CLASS ALLEGATIONS

35. Plaintiff Kelsey brings this nationwide class on behalf of himself and on behalf of all others similarly situated pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure.

36. The classes that the Plaintiff Kelsey seeks to represent are defined as follows:

> **Nationwide Class Definition.** All persons in the United States who are not ClarityCheck users and whose PII and/or biometric information was collected, maintained, sold, distributed, or shared by Defendant and whose PII and/or biometric information was made available either to the public for purchase through the ClarityCheck platform.

> **California State Sub-Class Definition.** All persons in the state of California who are not ClarityCheck users and whose PII and/or biometric information was collected, maintained, sold, distributed, or shared by Defendant and whose PII and/or biometric information was made available either to the public for purchase through the ClarityCheck platform.

> **New York State Sub-Class Definition.** All persons in the state of New York who are not ClarityCheck users and whose PII and/or biometric information was collected, maintained, sold, distributed, or shared by Defendant and whose PII and/or biometric information was made available either to the public for purchase through the ClarityCheck platform.

37. Excluded from the Class are Defendant and Defendant's subsidiaries, affiliates, officers and directors, and any entity in which the Defendant has a controlling interest; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

38. Plaintiff Kelsey reserves the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

39. **Numerosity**. Upon information and belief, there are at least millions of individuals who were victims of Defendant's practices by way of the profiles that Defendant collected and

either offered for sale or actually sold on them. Therefore, the members of the Class are so numerous that joinder of all members is impractical.

40. **Commonality**. There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class members. These common questions of law and fact include, without limitation:

a. Whether Defendant's misappropriation of names, personas, PII, and/or biometric information constitutes the knowing use of that information for commercial purposes without consideration;

b. Whether Defendant's misappropriation of names, personas, PII, and/or biometric information constitutes the knowing use of that information for commercial purposes without consent;

c. Whether Defendant solicited and obtained consent from Plaintiff and Class members to use their names, personas, PII and/or biometric information either in advertising materials to promote subscription purchases or credit based purchases on the ClarityCheck platform;

d. Whether Defendant solicited and obtained consent from Plaintiff and Class members to collect their names, personas, PII and/or biometric information to create profiles on the ClarityCheck platform;

e. Whether any statutory exemptions exist for Defendant's conduct;

f. The amount of profit made by Defendant in connection with the unauthorized use of names, personas, PII and/or biometric information of Plaintiff and Class members to create and sell access to the ClarityCheck platform; and

g. Whether Plaintiff and Class members are entitled to any form of relief, including injunctive relief, damages, attorneys' fees, costs, and pre- and post-judgment interest.

41. **Typicality**. Plaintiff Kelsey's claims are typical of those of other Class members because Plaintiff's PII and biometric information, like that of every other Class member, was commoditized and sold on the ClarityCheck platform. Further, Plaintiff, like all Class members, was injured by Defendant's uniform conduct. Plaintiff is advancing the same claims and legal theories on behalf of himself and all other Class members, and there are no defenses that are unique

to Plaintiff. The claims of Plaintiff and those of other Class members arise from the same operative facts and are based on the same legal theories.

42. **Adequacy of Representation**. Plaintiff Kelsey will fairly and adequately represent and protect the interests of the Class in that they have no disabling or disqualifying conflicts of interest that would be antagonistic to those of the other members of the Class. The damages and infringement of rights Plaintiff suffered are typical of the other Class members, and Plaintiff seeks no relief that is antagonistic or adverse to the members of the Class. Plaintiff has retained counsel experienced in complex class action litigation, including, but not limited to, data privacy class action litigation, and Plaintiff intends to prosecute this action vigorously.

43. **Superiority of Class Action**. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, as the pursuit of numerous individual lawsuits would not be economically feasible for individual Class members, and certification as a class action will preserve judicial resources by allowing the Class's common issues to be adjudicated in a single forum, avoiding the need for duplicative hearings and discovery in individual actions that are based upon an identical set of facts. Without a class action, it is likely that many members of the Class will remain unaware of the claims they may possess.

44. The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws and the ascertainable identities of Class members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

45. Adequate notice can be given to Class members directly using information maintained in Defendant's records.

46. **Predominance**. The issues in this action are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Defendant has engaged in a common course of conduct toward Plaintiff and Class members. The common issues arising from Defendant's conduct affecting Class members set out above predominate over any individualized issues. Adjudication of these issues in a single action has important and desirable advantages of judicial economy.

47. This proposed class action does not present any unique management difficulties.

## COUNT I

## CALIFORNIA RIGHT OF PUBLICITY STATUTE

CAL. CIV. CODE § 3344

48. Plaintiff and the California Sub-Class repeat and re-allege each and every allegation as if fully set forth herein.

49. California's right of publicity statue prohibits the "knowing use of another's name, voice, signature, photograph, or likeness, in any manner, or in products, merchandise, or goods, or for purposes of advertising and selling, or soliciting purchases of products, merchandise, goods or services, without such person's prior consent." Cal. Civ. Code § 3344.

50. Through the foregoing acts and omissions, Defendant used Plaintiff and California Sub-Class members' names, likenesses, photographs, and personas for commercial purposes without any sort of consent. Plaintiff and Class members' names and personas have commercial value, as does their PII and biometric information, as demonstrated by Defendant's use and the similar use of Defendant's competitors.

51. Plaintiff has been domiciled in both New York and California (with his primary residence in New York), and thus, Plaintiff's harm which occurred due to Defendant's conduct occurred in California. Accordingly, each use of a California Sub-Class member's name, likeness, or persona as used by Defendant violates Cal. Civ. Code § 3344.

52. The misappropriation statute, Cal Civ. Code §§ 3344, et. seq., provides that a person (or, therefore, a corporation) who violates the statute is liable "in an amount equal to the greater of seven hundred and fifty dollars ($750) or the actual damages" in addition to "any profits from the unauthorized use" inclusive of punitive damages and attorneys' fees and costs.

53. As a result of Defendant's violation of the statute, Plaintiff and Class members have suffered injury to their privacy rights and actual damages both economic and emotional – as well as each of the damages as discussed both above and below. Plaintiff and Class members seek damages, including: profits from misuse, statutory damages of $750 per California Sub-Class member, nominal damages, attorneys' fees and costs, and an entry of an injunction prohibiting Defendant's future illegal conduct.

## COUNT II

## VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW

CAL. BUS. & PROF. CODE §§ 17200, *et seq.*

54. Plaintiff and the California Sub-Class repeat and re-allege each and every allegation as if fully set forth herein.

55. Defendant has and is engaged in unfair competition, as that term is defined in Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"), violating the unlawful and unfairness prongs of the UCL.

56. **Unlawful Prong.** As described herein, Defendant's appropriation and use without consent of Plaintiff's and Class members' names, photographs, likenesses, and personal information – including PII and the biometric information – violates appropriation and invasion of privacy statutes in New York and California, which prohibit the misappropriation of a name or likeness.

57. **Unfairness Prong**. By engaging in the conduct described in this Complaint, including profiting from the collection, retention, sale and other use of personal information, which was misappropriated without consent, Defendant engages in and has engaged in "unfair" business acts and practices as prohibited by the UCL.

58. Additionally, Defendant violates the UCL by collecting biometric information using facial recognition on Plaintiff and Class members even though Defendant expressly says that it does not. This profoundly perturbs the privacy rights of Plaintiff and Class members, and is deliberately unfair conduct for which Defendant collects a profit through the sale of this feature in the ClarityCheck platform.

59. As a result of Defendant's actions, Plaintiff and Class members have been injured as described above – and are entitled to restitution and an injunction, as well as any other relief that this Court deems just and proper.

## COUNT III

## NEW YORK'S INVASION OF PRIVACY STATUTE

N.Y. CIV. RIGHTS LAW § 50, 51

60. Plaintiff and the New York Sub-Class repeat and re-allege each and every allegation as if fully set forth herein.

61. Through the foregoing acts and omissions, Defendant used Plaintiff and New York Sub-Class members' names, likenesses, photographs, and personas for commercial purposes without any sort of consent. Plaintiff and New York Sub-Class members' names and personas have commercial value, as does their PII and biometric information, as demonstrated by Defendant's use and the similar use of Defendant's competitors.

62. However, Plaintiff and New York Sub-Class members did not consent to the commercial use of their images and likeness, as well as their PII and biometric information, in order to enrich the Defendant. Further, Plaintiff and New York Sub-Class members have not been compensated for the use of their data.

63. Accordingly, Defendant violated Plaintiff and New York Sub-Class members' right to privacy under N.Y. Civ. Rights Law § 50, which prohibits the unauthorized use of a person's name, portrait, picture, likeness, or voice for advertising or trade purposes without written consent. Under N.Y. Civ. Rights Law § 51, Plaintiff and New York Sub-Class members have a private right of action to seek injunctive relief and recover damages.

## COUNT IV

## NEW YORK'S UNFAIR AND DECEPTIVE TRADE PRACTICES ACT

N.Y. GEN. BUS. LAW § 349

64. Plaintiff and the New York Sub-Class repeat and re-allege each and every allegation as if fully set forth herein.

65. New York has a strong public policy of protecting consumers' privacy interests as well as the privacy of their biometric data.

66. Additionally, New York's consumer protection statute, New York General Business Law § 349, follows Federal Trade Commission guidance such that violations of Section 5 of the Federal Trade Commission Act also violate New York's New York General Business Law § 349

67. Defendant defined as a "business[es]" under New York General Business Law § 349, engaged in "unfair" actions and business practices that were unethical, oppressive, unscrupulous, and substantially injurious to consumers.

68. Defendant secretly collects the PII of Plaintiff and Class members for profit without adequate consent, bore no corresponding benefit. And because Plaintiff and Class members were unaware of the full consequential scope and breadth of Defendant's actions, they could not have avoided the harm it caused.

69. Defendant secretly collects and shares biometric data for profit without adequate written consent, bore no corresponding benefit. And because Plaintiff and Class members were unaware of the full consequential scope and breadth of Defendant's actions, they could not have avoided the harm it caused.

70. Plaintiff and the New York Sub-Class seek all available remedies for Defendant's violation of GBL § 349, including actual damages, restitution, treble damages, statutory damages of $50 per violation, reasonable costs and attorneys' fees, and any other relief the Court deems just and proper.

## COUNT V

## UNJUST ENRICHMENT

71. Plaintiff and the Nationwide Class repeat and re-allege each and every allegation as if fully set forth herein.

72. In New York, a Plaintiff has a claim for unjust enrichment where (1) Defendant profited at the victim's expense; and (2) it would be against equity and good conscience to permit the Defendant to retain what Plaintiff seeks to recover. The same claim for unjust enrichment exists in almost every state, and the elements are substantially similar.

73. Here, Defendant failed to disclose to Plaintiff and Class members that it was collecting their PII, biometric information, and other data for profit through the sale of that information in the form of profiles on its ClarityCheck platform. Had Plaintiff and Class members known that they were having their PII and biometric information sold on Defendant's ClarityCheck platform, they likely would not have allowed for such conduct to take place – or they would have demanded the financial remuneration they were entitled to for the use of their quantifiably valuable data.

74. Defendant is therefore liable to Plaintiff and Class members for the money it received from the improper misappropriation of their data for commercial use, and it is against equity and good conscience to permit Defendant to retain said profits under these circumstances. This value should be disgorged from Defendant and placed into a constructive trust.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff Kelsey, on his own behalf and on behalf of all others similarly situated, prays for relief as follows:

A. For an Order certifying this case as a class action, appointing Plaintiff Kelsey as the lead plaintiff in this Action, and appointing Plaintiff's below-listed counsel as lead counsel in this Action;

B. For an award of restitution, actual damages, compensatory damages, statutory damages, disgorgement of profit into a constructive trust, nominal damages and statutory penalties, in an amount to be determined, as allowable by law;

C. For an award of equitable and injunctive relief;

D. For an award of attorneys' fees and costs;

E. For pre- and post-judgment interest on any amounts awarded; and

F. For such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMAND

75. Plaintiff hereby demands a trial by jury of all claims so triable.

**DATED:** Aug. 25, 2026

Respectfully submitted,

*/s/ Blake Hunter Yagman*
Blake Hunter Yagman
YAGMAN PLLC
626 RexCorp Plaza, Suite 605
Uniondale, New York, 11556
Tel.: (929) 709-1493
Email: blake.yagman@yagmanpllc.com

*Counsel for Plaintiff Kelsey and Class Members*